NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000621
18-JUN-2013
08:14 AM**

NO. CAAP-12-0000621

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

CAROL L. NEPAGE-FONTES, Petitioner-Appellee,
v.
JOHN E. NEPAGE, Respondent-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(TRUST NO. 00-1-0069)

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Ginoza, JJ.)

Respondent-Appellant John E. NePage (NePage) appeals from (1) the November 30, 2011 "Findings Of Fact, Conclusions Of Law, And Order Regarding The August 30 and 31, 2011 Hearing" (FOFsCOLs) and (2) the June 7, 2012 Final Judgment entered in the Circuit Court of the First Circuit[1] (probate court). The probate court entered judgment in favor of Bruce Fontes (Fontes), as personal representative of the estate of Carol NePage-Fontes (NePage-Fontes).

---

[1] The Honorable Kevin S.C. Chang presided over this matter until September 1, 2000. The Honorable Colleen S. Hirai presided until April 16, 2010. The Honorable Derrick H.M. Chan presided thereafter.

## I.  BACKGROUND

John E. NePage and Carol NePage-Fontes, siblings, were the co-trustees and beneficiaries of the John S. NePage Revocable Trust (Trust) created by their father, John S. NePage (Settlor). At Settlor's death in March 1998, the Trust possessed the following: (1) liquid assets of $529,923, (2) a condominium at 1717 Ala Wai Boulevard (Ala Wai condominium), (3) an undivided one-third leasehold interest in a condominium at 1650 Kanunu Street (Kanunu Street condominium), and (4) Settlor's tangible personal property.  The Trust's dispositive provisions stated the Trust's assets were to be distributed "in equal shares, one share to each of my children who outlive me[.]"

Pursuant to a verbal agreement, the siblings distributed the liquid assets in 1998.  NePage received $323,132, and NePage-Fontes received $198,147, giving NePage an excess distribution of $124,985.  Around April 1998, NePage-Fontes asserted NePage had breached an oral agreement that the $124,985 excess distribution represented payment in full for NePage's entire interest in the real property held by the Trust, and she began demanding NePage tender his interest to her.  NePage-Fontes repeated her demand at a meeting on November 11, 1998 and in writing on March 25, 1999, April 13, 1999, and July 16, 1999.  It is undisputed that NePage never returned the excess distribution to the Trust, nor did he transfer his interest in the Trust's real property.

On May 9, 2000, NePage-Fontes filed a petition in the probate court requesting court intervention and supervision to finalize the distribution of the Trust's assets.  The petition alleged certain assets had been distributed, and NePage had received an excess of his share but refused to equalize the distribution by deeding the real property.  The probate court granted the petition and ordered NePage-Fontes to, among other

things, provide NePage with a complete financial accounting of all Trust assets and divide Settlor's tangible personal property.

Over the next ten years, the parties continued litigation in the probate court. In the interim, the probate court issued a May 16, 2002 order removing NePage-Fontes as co-trustee and ordering NePage-Fontes to "relinquish possession of and turn over to Respondent [NePage] all remaining trust property owned by the Trust, including but not limited to, all tangible personal property and the Trust's real property[.]"

NePage-Fontes passed away on April 7, 2007. She remained in the Ala Wai condominium until her death. She also retained possession of the Kanunu Street property until her death. NePage-Fontes's husband, Bruce Fontes, remained in the Ala Wai condominium until NePage commenced eviction proceedings and evicted Fontes in September 2007. From 2007, NePage had exclusive control of the two properties.

Fontes was appointed personal representative of NePage-Fontes's estate. Fontes filed several petitions on the estate's behalf, including a petition (Petition) filed May 25, 2010 requesting, among other things, that NePage "wind up the affairs of the Trust and terminate said Trust and make final distributions as follows: a[] $124,985.00 priority distribution to Petitioner [Fontes] and one-half of the Trust assets to Petitioner forthwith."

Fontes requested an evidentiary hearing, which the probate court conducted on August 30 and 31, 2011. The probate court heard testimony from NePage, Fontes, an accountant who testified about the Trust's expenses NePage had paid, and a contractor who testified about repairs to the Ala Wai condominium.

On November 30, 2011, the probate court entered its FOFsCOLs, granting Fontes's request for a priority distribution

3

of $124,985 from the Trust. The probate court concluded NePage had breached his fiduciary duties as trustee by withholding the $124,985 excess distribution. It removed NePage as trustee and ordered a surcharge in the form of 10% interest on the excess distribution from January 2000 to August 2011. The probate court also ordered partial reimbursement for NePage's real property repair expenses and his attorneys' fees and costs; denied NePage reimbursement for real property taxes, maintenance and utility fees, eviction expenses, and litigation expenses; ordered a partial award for unpaid real property rental income; and denied trustee compensation or any award of Settlor's tangible personal property.

The probate court entered a certified judgment on June 7, 2012, from which NePage timely appealed. On appeal, NePage contends:

(1) preclusion doctrines barred the probate court from determining the propriety of the excess distribution and whether NePage had breached his fiduciary duties;

(2) the probate court erred in concluding NePage had breached his fiduciary duty and in assessing the interest surcharge;

(3) the probate court erroneously removed NePage as trustee without providing notice and opportunity to be heard; and

(4) the probate court erred in denying NePage's claims for reimbursement, recovery of real property rent, tangible personal property, and trustee compensation.

## II. DISCUSSION

A.     Breach Of Fiduciary Duty And Removal Of Trustee

The probate court removed NePage as trustee based on its conclusion that NePage had breached his fiduciary duty by taking an excess distribution from the Trust in 1998. NePage contends the probate court had previously determined the excess

4

distribution was not a breach of fiduciary duty, and the doctrines of collateral estoppel and law of the case prohibit the probate court from revisiting the issue.

Neither doctrine applies here. Collateral estoppel prevents the relitigation of a fact or issue only when "(1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [collateral estoppel] is asserted was a party or in privity with a party to the prior adjudication." Bremer, 104 Hawai'i at 54, 85 P.3d at 161 (quoting Dorrance v. Lee, 90 Hawai'i 143, 149, 976 P.2d 904, 911 (1999). The doctrine has no applicability to prior rulings in the same pending case. S.O.V. v. People in Interest of M.C., 914 P.2d 355, 359 (Colo. 1996).

The law of the case doctrine "refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case, including rulings made by the judge[.]" Wong, 66 Haw. at 396, 665 P.2d at 162; see also Jordan v. Hamada, 64 Haw. 446, 454, 643 P.2d 70, 73 (1982). The doctrine does not apply "if the initial ruling was made on an inadequate record or was designed to be preliminary[.]" Naser Jewelers, Inc. v. City of Concord, N.H., 538 F.3d 17, 20 (1st Cir. 2008).

The doctrine does not apply here because the probate court's previous orders were preliminary in nature and it did not make any rulings addressing the excess distribution's propriety or a potential breach of fiduciary duty. The probate court had not held an evidentiary hearing until the 2011 hearing, and the probate court did not err in issuing a ruling based on the developed record. Although the probate court had issued several orders denying petitions from NePage-Fontes and Fontes to distribute or compel the sale of the trust assets, the record

5

shows the probate court denied the petitions not on the merits, but rather because the petitions' requests were premature given the ongoing proceedings.

NePage further contends preclusive effect should be given to the probate court's May 16, 2002 order that NePage-Fontes relinquish possession of the Trust's real property. The record shows, however, that the probate court issued the order as a sanction against NePage-Fontes due to her failure to comply with the court's previous orders. The court did not rule on either party's entitlement to the real property or to the excess distribution. Therefore, the order was not a judicial determination on a question of law to which the law of the case doctrine applies. See Jordan, 64 Haw. at 454, 643 P.2d at 73.

NePage also claims he did not receive adequate notice that his role as trustee was at issue because Fontes's petition did not request removal. Contrary to NePage's argument, a court may remove a trustee on its own initiative, even without an express petition requesting a trustee's removal. In re Holt's Trust Estate, 33 Haw. 352, 355 (Haw. Terr. 1935) (affirming decree of removal issued during a hearing "not upon a petition properly brought for [the trustee's] removal but in a collateral proceeding"). Nothing in the HPR expressly provides that removal proceedings must be instituted only by petition. Rather, HPR Rule 3(c) states: "Petitions shall be construed liberally, and may be deemed amended to conform to the evidence presented," and the commentary states: "This rule is in keeping with the informal nature of the proceedings and the desire to dispose of matters quickly without delay caused by failure to follow technical rules of pleading."

We agree with NePage's contention that a trustee is entitled to due process, with notice and an opportunity to be heard, before removal. Restatement (Third) of Trusts § 37 cmt. d

6

(2003); In re Estate of Mercier, 961 N.E.2d 958, 963 (Ill. App. Ct. 2011); Woods v. Wells Fargo Bank Wyoming, 90 P.3d 724 (Wyo. 2004); see also In re Holt, 33 Haw. at 356 (noting the masters' reports gave notice of the removal issue, and the trustee appeared in court personally and by counsel to defend his trust activities). In this case, NePage received adequate notice and opportunity to be heard at the evidentiary hearing. Fontes orally requested removal during his opening argument, and NePage did not object or request a continuance. NePage testified and submitted evidence on his administration of the Trust. Therefore, the probate court's removal of NePage as trustee did not deprive him of due process.

Moreover, the removal was justified because NePage had breached his fiduciary duties by withholding the excess distribution. Trustees have a duty to "manage the trust assets solely in the interest of the beneficiaries[,]" HRS § 554C-5 (2012), which "precludes a trustee from dealing with trust assets to his own advantage or benefit[]" without the beneficiaries' consent. Steiner v. Hawaiian Trust Co., 47 Haw. 548, 558, 393 P.2d 96, 103 (1964).

The record shows that although NePage and NePage-Fontes initially agreed to NePage's receipt of the excess distribution, NePage-Fontes began objecting to the excess distribution in 1998. NePage does not challenge the probate court's finding that by mid-1999, it was clear that an amicable resolution would not be reached regarding the distribution. A beneficiary who consents to a deviation from the trust's terms may retract her consent and hold the trustee liable for continuing the improper conduct thereafter. Restatement (Third) of Trusts § 97 cmt. c (2012); see also Hawaiian Trust Co. v. Gonser, 40 Haw. 245, 254 (Haw. Terr. 1953) ("[W]here a cestui has consented [to an alteration of

7

the trust] he may withdraw the same before it has been acted upon.").

NePage argues the language of the Trust gave trustees discretion in making distributions.[2] However, the discretion given by the Trust's language did not empower the trustee to vary the trust's dispositive provisions or to benefit in any way one beneficiary at the expense of another. Although the Trust gave NePage discretion in allotting the various trust assets, NePage remained obligated to make distributions "in equal shares" as directed by the Trust's terms. "Any deviation from the terms of the trust instrument . . . would constitute a breach of trust even though the trustee was acting in good faith and his deviation was merely a mistake in judgment." Steiner, 47 Haw. at 575, 393 P.2d at 111. Therefore, the probate court did not err when it removed NePage as trustee based on his breach of fiduciary duties.

---

[2] The Trust states:

> F.     TRUSTEE'S POWERS. The Trustee shall have the following powers in addition to those now or later conferred by law which are to be exercised as the Trustee in the Trustee's discretion determines to be in the best interests of the beneficiaries:
> * * * *
>
> (i) DISTRIBUTION DISCRETION. to make any payment, division, segregation, allocation or distribution required or authorized in this instrument in pro rata or non pro rata shares, in kind or partly in kind and partly in cash, to make any such payment, division, segregation, allocation or distribution in undivided fractional interests in property or entire interests in property all without liability for, or obligation to make compensating adjustments by reason of, disproportionate allocations of unrealized gain for federal income tax purposes; and to make any distribution, division, segregation or allocation subject to any mortgage or pledge which may be a lien on any property to be divided, segregated, allocated or distributed without paying the debt or obligation for which such mortgage or pledge was given as security[.]

8

B.        Surcharge

The probate court also assessed a surcharge for interest on the excess distribution in the amount of 10% per year, from January 1, 2000 to July 31, 2011.  The probate court surcharged NePage for the interest because he knew about his potential liability since January 1, 2000 (a reasonable amount of time after NePage-Fontes first objected to the distribution), and he benefitted from personal use of the distribution.  The probate court has discretion to surcharge a trustee for breach of fiduciary duty, Steiner, 47 Haw. at 575, 393 P.2d at 111, and as discussed above, we agree with the probate court's conclusion that NePage breached his fiduciary duty.

NePage argues the probate court erred in surcharging interest on the entire amount of the excess distribution ($124,985), rather than half of the distribution representing NePage-Fontes's share.  We disagree.  The probate court correctly concluded "[b]ecause [NePage] has already received a $124,985.00 distribution of Trust residue, the Estate of [NePage-Fontes] is entitled to a distribution of like amount."  It follows that NePage-Fontes is entitled to interest on like amount.  See Restatement (Second) of Trusts § 255.

We also disagree with NePage's claim that the probate court erred in assessing interest at a rate of 10%.  The probate court based the rate on testimony from one of Fontes's witnesses, an accountant who calculated NePage's liability by applying a 10% interest rate.  The legal rate of interest in Hawai'i is 10%, HRS § 478-2 (2008 Repl.), and where a trustee is liable for the payment of interest, the trial court has discretion to fix the interest rate at the legal rate.  Restatement (Second) of Trusts § 207; In re Testamentary Trust of Hamm, 707 N.E.2d 524, 530 (Ohio Ct. App. 1997); Burch v. Dodge, 608 P.2d 1032, 1037

(Kan. Ct. App. 1980). We cannot conclude the probate court abused its discretion in assessing the surcharge.

C.          Reimbursement For Repairs

The probate court reimbursed NePage in the amount of $3,330 for repairs and renovations he performed on the Ala Wai condominium. The probate court based this amount on an estimate provided by a general contractor who testified about the repairs. NePage claims the probate court erred in ordering reimbursement based on the expert's estimate, rather than on the figures NePage provided at the hearing. We conclude the probate court did not err because "it is within the province of the trier of fact to weigh the evidence and to assess the credibility of the witnesses, and this court will refrain from interfering in those determinations." Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 117-18, 58 P.3d 608, 628-29 (2002) (internal quotation marks omitted).

The probate court also found NePage incurred $8,260.48 in expenses to repair and renovate the Kanunu Street leasehold. The court reimbursed NePage for only one-third of his expenses ($2,753.49), however, "[b]ecause the Trust owns one-third (1/3) of the Kanunu Street leasehold[.]"

Generally, "[t]rustees have an inherent equitable right to be reimbursed all expenses which they reasonably and properly incur in the execution of the trust[.]" In re Bishop, 36 Haw. 403, 411 (Haw. Terr. 1943) (emphasis added); Bishop Trust Co. v. Cooke Trust Co., 39 Haw. 641, 651 (Haw. Terr. 1953) ("[T]hose who perform services beneficial to a trust estate will be compensated therefor."). Nothing in the FOFsCOLs or in the record indicates the Kanunu Street repair expenses were unreasonable or were not properly incurred. We conclude the probate court erred in denying full reimbursement based solely on the fact that the Trust owns only a partial interest in the leasehold.

10

D.        Other Reimbursements And Compensation

The probate court denied NePage any reimbursement for the taxes and maintenance and utility fees for the Trust's real property.  The record indicates the above expenses were properly incurred, and the probate court did not find otherwise.  However, the court denied reimbursement because NePage did not rent or offer the properties for sale and therefore breached his duty to make the properties productive.  "A trustee is also under a duty to the beneficiary to use reasonable care and skill to make the trust property productive, and where the trust corpus is land, the trustee is normally under a duty to manage it so that it will produce income."  Matter of Estate of Dwight, 67 Haw. 139, 146, 681 P.2d 563, 568 (1984) (citation omitted).  If a trustee has incurred a liability for a breach of trust, the amount of his reimbursement can be reduced to the extent of his liability for the breach.  Restatement (Second) of Trusts § 244 cmt. e. Indemnity will be altogether denied if the amount of the trustee's liability equals or exceeds the amount of indemnity to which he would be entitled.  Id.

The probate court applied the amount of NePage's liability for lost rental income to set off his reimbursement entirely.  However, the record does not support the probate court's calculation of the amount of his liability.  NePage testified that the fair rental value for the Ala Wai condominium from 1998 to 2007 was between $1,200 to $2,000 per month.  The probate court found the rental value from 2007 to August 2011 (during which NePage had exclusive possession of the condominium) was also within this range.  Fontes did not introduce any evidence of the condominium's rental value, however.  Rather, the only evidence of the condominium's rental value after 2007 was NePage's testimony that he found the property in "unrentable" condition after Fontes's eviction.  Although Fontes denied the

11

extent of the property's damaged condition, he admitted certain damages. The probate court also credited evidence from a contractor confirming that parts of the condominium showed "excessive wear and water damage" and that several major fixtures needed to be replaced. Viewing the record as a whole, we conclude the probate court erred in calculating the property's rental value.

Moreover, NePage's decision not to sell the properties did not constitute a breach of duty. Although trustees are generally under a duty to sell unproductive or underproductive property within a reasonable time, Restatement (Second) of Trusts § 240; Rutanen v. Ballard, 678 N.E.2d 133, 138 (Mass. 1997), in this case the Trust's terms permitted the trustee to "abandon" or "retain as investments any property . . . even though such property may be . . . underproductive[.]"

Therefore, NePage's reimbursement may be reduced to the extent of his liability for any loss that may have been caused by his failure to rent out the properties. However, the probate court erred in calculating lost rental income based on a figure that had no support in the record, and we vacate this portion of the probate court's FOFsCOLs.

The probate court also erred when it denied reimbursement for expenses related to NePage's eviction of Fontes from one of the Trust's condominiums in 2007. The probate court concluded the eviction expense was "unnecessary" because NePage did not make the condominium productive. However, on March 8, 2002, the probate court had issued an order to NePage-Fontes to relinquish possession of and turn over to Nepage "all remaining trust property owned by the Trust, including but not limited to, . . . the Trust's real property[.]" NePage-Fontes and Fontes remained in the condominium until NePage-Fontes's death in 2007, and Fontes remained until NePage evicted him. Because the

eviction was necessary to effectuate the probate court's order, the probate court erred in denying reimbursement based on the grounds it stated.

The probate court did not abuse its discretion in denying NePage (1) compensation for his services as trustee and (2) prejudgment interest on the reimbursement for the master's fees. Generally, "[i]f the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation." Steiner, 47 Haw. at 574, 393 P.2d at 110. Given NePage's breach of duty and the resulting prolonged litigation, the probate court's denial of compensation was within the scope of its discretion.

The probate court also did not err in denying NePage's request for rental income for the period during which NePage-Fontes and Fontes occupied the Ala Wai condominium. NePage does not dispute the court's finding that, in accordance with Settlor's wish that NePage-Fontes live at the condominium, the parties never had a rental agreement in effect, and NePage never charged or attempted to collect rent. Therefore, NePage consented to NePage-Fontes's occupation of the Ala Wai condominium rent-free. We further conclude the probate court did not abuse its discretion in denying a partial amount of rental income from the Kanunu Street condominium, based on its finding that there was insufficient credible evidence of the amount of income.

E.      Attorneys' Fees And Costs And Personal Litigation Costs

The probate court limited the award of attorneys' fees and costs paid to Bruce B. Kim because it found insufficient credible evidence that certain fees were related to the Trust or the trustee's duties. NePage argues this finding was incorrect

13

but fails to provide any specific basis on which to find clear error.

The probate court did not err in finding the attorneys' fees and costs of Randall Yee were $14,016.60. The probate court apparently based its calculation on the amount reflected in Yee's invoices. Although the record indicates NePage may have paid in excess of $14,016.60, the probate court did not err basing its award on the amount reflected in the invoices.

The probate court did not abuse its discretion in denying (1) the remainder of NePage's claims for attorneys' fees and costs, (2) NePage's personal litigation costs, and (3) pre-judgment interest on its award of attorneys' fees to NePage. The probate court determined NePage's breach of fiduciary duty contributed to a lengthy litigation and delay in winding-up the Trust, which did not benefit the Trust or the beneficiaries' interests. We find no abuse of discretion in the court's denial of fees on those grounds.

F.      Settlor's Tangible Personal Property

The probate court clearly erred in finding Settlor's tangible personal property in the Trust had already been distributed. The uncontroverted evidence in the record shows that NePage and his sister had divided and boxed the personal property, but Fontes prevented NePage from removing the boxes from the Ala Wai condominium. NePage testified that none of the boxes were in the condominium when he evicted Fontes, and Fontes presented no evidence accounting for the personal property's current location. We vacate this portion of the probate court's FOFsCOLs.

### III. CONCLUSION

Accordingly, we (1) vacate the June 7, 2012 "Final Judgment Pursuant to Haw. R. Civ. P. 54(b) In Favor Of Petitioner Bruce Fontes, As Personal Representative Of The Estate Of Carol

14

NePage-Fontes" and (2) vacate the following Findings of Fact from the November 30, 2011 "Findings Of Fact, Conclusions Of Law, And Order Regarding The August 30 and 31, 2011 Hearing": Findings of Fact 112, 117-20, 125-27, and 147. All portions of the Findings of Facts, Conclusions of Law and Order that are based on the vacated Findings of Fact are also vacated. We affirm the remainder of the FOFsCOLs and remand this case for further proceedings.

DATED: Honolulu, Hawai'i, June 18, 2013.

On the briefs:

Douglas C. Smith
Mark M. Murakami
E. Kumau Pineda-Akiona
(Damon Key Leong Kupchak
Hastert)
for Respondent-Appellant.

Michael D. Rudy
Cheryl R. Ng
(MacDonald Rudy Byrns O'Neill
& Yamauchi)
for Petitioner-Appellee.

Presiding Judge

Associate Judge

Associate Judge

15